[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-12076
Non-Argument Calendar

_____

D. C. Docket No. 05-00273-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BILLY JACK KEENE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(November 30, 2006)**

Before ANDERSON, BIRCH and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Between July 26 and August 4, 2005, Billy Jack Keene and his co-conspirators, Jesse Arnold and Jennifer Keene (Keene's sister and Arnold's girlfriend), robbed three banks in southern Alabama. As part of each heist, Keene or Jennifer would drive Arnold to and from the banks, while Arnold went inside, handed the teller a threatening note, and took the money from the shaken teller. The note Keene and Arnold jointly drafted for the first bank read, "Give me all the money, and no one will get hurt! Love, me." Keene, Arnold and Jennifer then made away with $5,205.00.

Keene and his co-conspirators were arrested soon after the last bank robbery following a tip from Arnold's mother to the FBI that her son was responsible for the string of robberies. Keene was indicted for three counts of taking money by force or intimidation from a financial institution insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. § 2113(a). He pleaded guilty to all three counts without a plea agreement.

The probation office submitted a pre-sentence investigation report, which recommended that the district court enhance Keene's sentencing guideline base offense level by two pursuant to U.S.S.G. § 2B3.1(b)(2)(F). That guidelines provision specifies that if, in the course of a robbery, extortion or blackmail, "a threat of death was made," the defendant's base offense level must be "increase[d]

2

by 2 levels." The theory was that the note Keene had helped draft, which was handed to the teller at the first bank, constituted a threat of death. Keene objected to any threat-of-death enhancement based on the note, arguing that while the note warned the teller that she would be "hurt" if she did not comply with Arnold's demands, it did not imply that Arnold would kill her. Keene's position is that the threat of violence alone is not enough for the threat-of-death enhancement.

The district court overruled Keene's objection, and based on the enhanced offense level and Keene's criminal history arrived at an advisory guidelines range of 100 to 125 months imprisonment. Without the two-level threat-of-death enhancement the guidelines range would have been 84 to 105 months imprisonment. The district court sentenced Keene within the enhanced range, imposing a 120-month sentence, but in doing so the court indicated that even if the two-level enhancement had not been applied the court would have reached the same sentence under its 28 U.S.C. § 3553(a) authority to impose a reasonable sentence outside the guidelines range.

In his appeal to us, Keene raises the same issue that he did in the district court, arguing that the U.S.S.G. § 2B3.1(b)(2)(F) enhancement does not apply to threats of violence unless the robber brandished a weapon, stated or suggested he had one, or at least made a menacing gesture. The issue is one of first impression

3

before our Court. From what we can tell, only one other circuit has decided the issue, and it held that the threat-of-death enhancement did in fact apply to circumstances similar to those we have here. See, e.g., United States v. Thomas, 327 F.3d 253, 254–55 (3d Cir. 2003) (holding that note given to bank teller by the defendant, which read, "Do exactly what this says, fill the bag with $100s, $50s and $20s, a dye pack will bring me back for your ass, do it now. Truely [sic] yours," constituted a threat of death warranting the enhancement). That may be the way the issue should be decided, but we need not decide it in this case.

The reason it is unnecessary for us to decide the enhancement issue is that a decision either way will not affect the outcome of this case. We know it will not because the district court told us that the enhancement made no difference to the sentence it imposed. After the court overruled Keene's objection and found what the court believed to be the appropriate guideline range taking into consideration the two-step enhancement, the court made clear that even if its interpretation and application of U.S.S.G. § 2B3.1(b)(2)(F) was wrong, it would still hand down the same 120-month sentence:

> And I will say for the record that even if the guideline calculations are wrong, my application of the sentencing factors under Section 3553(a) would still compel the conclusion that a 10-year sentence [120 months] is reasonable and appropriate under all the factors that I considered.

4

(R:29:14).  The court essentially accepted the invitation extended by the concurring opinion in United States v. Williams, 431 F.3d 767, 773 (11th Cir. 2005) (Carnes, J., concurring), which is not surprising since the same district court judge was involved in both cases.

As the concurring opinion in Williams explained, "pointless reversals and unnecessary do-overs of sentence proceedings" can be avoided if district courts faced with disputed guidelines issues state that the guidelines advice that results from decision of those issues does not matter to the sentence imposed after the § 3553(a) factors are considered.  Id.  Likewise, if resolution of the guidelines issue does matter to the judge's ultimate sentencing decision, noting that it does "will help focus our attention on the issues that matter."  Id.  This approach is a legitimate one because, as the Williams concurring opinion explained, "[t]he Supreme Court and this Court have long recognized that it is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence."  Id. (citations to four supporting decisions omitted).

Whether to decide and state on the record if the decision of a guidelines issue matters to the ultimate sentence imposed is up to the district court in each individual case.  Id. at 775–76 ("It is the prerogative of sentencing courts to speak

5

or remain silent about such matters. The choice is theirs."). Here, the district court decided to speak on the matter and told us that its resolution of the § 2B3.1(b)(2)(F) enhancement issue did not matter because it would have imposed the same sentence, using its § 3553(a) authority, even without the enhancement. That is all we need to know, except for one thing.

The one thing we add to the approach suggested in the <u>Williams</u> concurring opinion is that the sentence imposed through the alternative or fallback reasoning of § 3553(a) must be reasonable. In determining whether it is reasonable we must assume that there was guidelines error—that the guidelines issue should have been decided in the way the defendant argued and the advisory range reduced accordingly— and then ask whether the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable. Otherwise, we will not know whether any error in deciding the guidelines issue, in arriving at the advisory guidelines sentence, was truly harmless. The <u>Williams</u> concurring opinion approach is, after all, an assumed error harmlessness inquiry. It has two components. One is knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way, and we know that in this case because the court told us. The other component is a determination that the sentence would be reasonable even if the guidelines issue had been decided in

6

the defendant's favor, and we turn to that question now.

As we have already pointed out, if the district court had decided the U.S.S.G. § 2B3.1(b)(2)(F) enhancement issue in Keene's favor the advisory guidelines range would have been 84 to 105 months, instead of the 100 to 125 months range that the court arrived at applying the two-level enhancement. The question then, is whether the 120-month sentence the court imposed is reasonable, assuming exactly the same conduct and other factors in the case, but using an advisory range of 84 to 105 months.

Our post-Booker reasonableness review takes into account the § 3553(a) factors as well as the advisory guidelines range. United States v. Booker, 543 U.S. 220, 261, 125 S. Ct. 738, 765–66 (2005) (maj. op. of Breyer, J.). It is a "deferential" review, and the burden is on the defendant to prove that his sentence is unreasonable in light of the record and section 3553(a). United States v. Valnor, 451 F.3d 744, 750 (11th Cir. 2006). Keene cannot carry the burden of showing that his 120-month sentence was unreasonable even with an assumed advisory guidelines range of 84 to 105 months.

The facts developed during the guilty plea and sentence process were that: (1) Keene, at 29 years of age, had already been convicted of possession of marijuana and cocaine, burglary, credit card fraud, passing bad checks, and driving

while under the influence; (2) Keene was on probation at the time he committed these crimes; (3) Keene had a leading role in planning the three bank robberies; (3) Keene helped draft the note, which at the very least threatened violence against the bank teller; and (4) Keene induced his sister, who had no criminal history, to join in the criminal enterprise. Given the circumstances, a sentence of 120 months for the three robberies is not unreasonable regardless of whether the guidelines range is 84 to 105 months or 100 to 125 months. See United States v. Hunt, 459 F.3d 1180, 1185 (11th Cir. 2006) ("a district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence").

For these reasons, we conclude that if there was any misapplication of the §2B3.1(b)(2)(F) enhancement, "the error did not affect the district court's selection of the sentence imposed." Williams v. United States, 503 U.S. 193, 203, 112 S. Court. 1112, 1120–21 (1992). Put a little differently, it would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm.

**AFFIRMED.**