[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12675
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2012
JOHN LEY
CLERK

D.C. Docket No. 4:10-cr-00027-RH-WCS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY LAMAR HAMILTON,

Defendant-Appellant.

_____

No. 11-12676
Non-Argument Calendar

_____

D.C. Docket No. 4:10-cr-00028-RH-WCS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY LAMAR HAMILTON,

                                                    Defendant-Appellant.

_____

No. 11-12677
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cr-00078-RH-1


UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,

versus

TONY LAMAR HAMILTON,

                                                    Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(July 10, 2012)

Before CARNES, WILSON, and FAY, Circuit Judges.

PER CURIAM:

Tony Hamilton appeals his 114-month total sentence, imposed after he

pleaded guilty to: (1) possessing firearms and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) impersonating a federal law enforcement officer, in violation of 18 U.S.C. § 912; and (3) inducing another to obstruct justice, in violation of 18 U.S.C. § 1512(b)(2)(B).  On appeal, he argues that the district court erroneously denied him a reduction for acceptance of responsibility. The government responds that, even if the district court erred, any error was harmless.  For the reasons set forth below, we affirm Hamilton's total sentence.

I.

In February 2010, Lieutenant Kent Harvey, a Florida Fish and Wildlife officer, was acting as a security officer while university students conducted research on property owned by the City of Tallahassee.  During this research, Hamilton drove onto the property with flashing lights.  Harvey believed that Hamilton's car was a law enforcement vehicle due to the flashing lights.  Hamilton drove up to Harvey's car, and Hamilton stated that he was a federal law enforcement officer with the U.S. Forest Service.  He also stated that he was a firefighter with the Forest Service, had police training, worked in a law enforcement capacity for the Forest Service when he was not acting as a firefighter, and had been asked to keep an eye on the property by a Tallahassee Police Department officer.  Hamilton then left the property.  He had never worked

3

as a law enforcement officer for the Forest Service.

In June 2010, Hamilton pleaded guilty in two cases. In the first, he pleaded guilty to possessing a firearm as a convicted felon (hereinafter "Case 1"), and in the second, he pleaded guilty to impersonating a federal law enforcement officer (hereinafter "Case 2").

Before he was sentenced, Hamilton was charged in a third case (hereinafter "Case 3") because he had directed Tabatha Hamilton ("Tabatha"), his ex-wife, to move firearms and ammunition from his house to the house in which Tabatha was living. A search of Hamilton's house revealed firearm magazine parts, firearm grips, and a pistol magazine containing 13 rounds of ammunition. A search of Tabatha's bedroom in her mother's house revealed 6 firearms, a rifle bag, a ballistic vest, 5 pairs of handcuffs with a handcuff key, and approximately 2,300 rounds of ammunition. Hamilton pleaded guilty in this case to one count of possessing firearms and ammunition as a convicted felon and to one count of inducting another to obstruct justice. Tabatha also pleaded guilty in Case 3, to concealing evidence to be used in an official proceeding.

According to the presentence investigation report ("PSI"), after Hamilton was arrested in Case 3, he made threatening statements about Harvey and the prosecutor assigned to his case. The statements regarded killing Harvey and

4

hurting the prosecutor. As to his guideline calculations, the PSI grouped Cases 1 and 3 into one group ("Group 1") and Case 2 into a second group ("Group 2"). For Group 1, Hamilton was assigned a base offense level of 20, and after a number of enhancements were applied, his adjusted offense level came to 30. Hamilton was not awarded a reduction for acceptance of responsibility, and his Group 1 adjusted offense level was used to produce his total offense level of 30. The PSI noted that Hamilton had been adjudicated guilty of impersonating an officer in Florida in 1997, a crime for which he received no criminal history points. He did receive one criminal history point for a 2002 conviction for grand theft of a motor vehicle, which gave him a criminal history category of I. Based on an offense level of 30 and a criminal history category of I, his guideline range was 97 to 121 months' imprisonment. Prior to sentencing, Hamilton objected that, among other things, he should have received a reduction for acceptance of responsibility because he timely pleaded guilty in all three cases.

At the sentencing hearing, Mark Leon testified that he was a special agent with the Federal Bureau of Investigations. Leon investigated the threats that Hamilton made against Harvey and the prosecutor. One of the inmates to whom Hamilton had expressed the threats agreed to wear a recording device when speaking with Hamilton. Leon testified that, while being recorded, Hamilton had

made threats against Harvey and the prosecutor. Specifically, Hamilton had stated that he was thinking that he should kill Harvey in a year or two because if he killed Harvey too soon, the attention from the killing would be focused on him. Hamilton also said that Harvey might be a captain by the time he got Harvey, but that he would get Harvey.

Hamilton reiterated his objection regarding the denial of a reduction for acceptance of responsibility. The court found that Harvey had not accepted responsibility because he had: (1) made threats against Harvey and the prosecutor, and (2) directed Tabatha to move his firearms. Thus, Hamilton's guideline range remained 97 to 121 months' imprisonment. The court further stated that it had notes regarding Hamilton using a stolen tow truck, but that the issue had not come up during sentencing. The government asked the court not to consider Hamilton's possible use of a stolen tow truck because it did not have concrete information on the issue.

The court sentenced Hamilton to a total sentence of 114 months' imprisonment. The court explained that it had considered all of the 18 U.S.C. § 3553(a) sentencing factors. Although the court had made rulings on Hamilton's objections to the PSI's guideline calculations, considered the advisory guideline range, and imposed a sentence that happened to be within that range, the court

stated that it would have imposed the same sentence even if the Sentencing Guidelines did not exist. The court had originally believed that a ten-year sentence was appropriate for Hamilton, but after disregarding the possible use of a stolen tow truck, the court determined that a slightly shorter sentence was necessary. A 114-month (9.5-year) sentence was sufficient, but not greater than necessary, to accomplish the § 3553(a) sentencing goals.

The court further explained that Hamilton's criminal history category was only a category I, but he also had an offense that was too old to count toward his criminal history category. Normally, distant offenses were to be disregarded, but here, Hamilton's previous and current offenses included impersonating a law enforcement officer. His pattern of criminal activity put both actual law enforcement officers and the general public at risk and warranted "a substantial sentence." Hamilton further threatened the criminal justice system and rule of law when he made threats against Harvey and the prosecutor. The court also determined that Hamilton's actions in attempting to hide evidence were serious, and those actions led to his ex-wife becoming a convicted felon. Thus, under the circumstances, a shorter sentence would not achieve § 3553(a)'s sentencing purposes.

II.

We review the reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). Under the abuse of discretion standard, the sentence will be affirmed unless the district court made a clear error of judgment. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011). "[W]e will not second guess the weight (or lack thereof) that the [district court] accorded to a given factor . . . as long as the sentence ultimately imposed is reasonable in light of *all* the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (quotation omitted), *cert. denied*, 131 S.Ct. 2962 (2011). The party challenging a sentence bears the burden of establishing that it is unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

"[I]t is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence." *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006) (quotation omitted). Thus, it is unnecessary to decide a disputed guidelines issue when: (1) a district court stated that it "would have reached the same result even if it had decided the guidelines issue the other way," and (2) "the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor."

*Id.* In determining whether the sentence is reasonable, we "assume that there was a guidelines error—that the guidelines issue should have been decided in the way the defendant argued and the advisory range reduced accordingly—and then ask whether the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable." *Id.*

We review the substantive reasonableness of a sentence in light of the record and the § 3553(a) factors. *Talley*, 431 F.3d at 788. The district court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). These purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the defendant's history and characteristics, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7). It is within the district court's discretion to determine how much weight to give to each § 3553(a) factor. *United States v. Williams*, 526 F.3d

1312, 1322 (11th Cir. 2008).

The district court expressly stated that, despite its rulings on Hamilton's objections to the guideline range, it would have imposed a 114-month sentence even if the Sentencing Guidelines did not exist. Thus, even if the court erroneously denied Hamilton's request for a three-level reduction for acceptance of responsibility, the error was harmless unless it resulted in an otherwise unreasonable sentence based on the § 3553(a) factors. *See Keene*, 470 F.3d at 1349. In determining the reasonableness of Hamilton's 114-month sentence for purposes of this analysis, we must assume that the district court erred in denying a three-level reduction. *See id.* at 1349. With a three-level reduction, Hamilton's offense level would have been 27, and his guideline range would have been 70 to 87 months rather than 97 to 121 months. Although Hamilton's sentence is greater than the applicable guideline range under this analysis, the guideline range is only one of the factors that must be considered in determining the reasonableness of a sentence, and the weight to be given any particular factor is left to the discretion of the district court. *See Snipes*, 611 F.3d at 872. Because the record and the remaining § 3553(a) factors otherwise support Hamilton's sentence, we conclude that the sentence was reasonable.

Hamilton has failed to demonstrate that his sentence was substantively

unreasonable in light of the record and the § 3553(a) factors. The sentence met the goals encompassed within § 3553(a). As the court discussed, Hamilton has exhibited a pattern of threatening the criminal justice system, in that he has impersonated a law enforcement officer on more than one occasion, and he threatened two federal officials involved in prosecuting the instant cases. In addition to threatening the criminal justice system itself, Hamilton has shown a disregard for criminal laws, as evidenced by his 2002 conviction for grand theft of a motor vehicle and his four counts of conviction in the three instant cases. Considering Hamilton's repeated disregard of the law, both in the past and after being arrested for his conduct in Cases 1 and 2, a 114-month sentence was appropriate and reasonable to promote respect for the law, provide just punishment, deter Hamilton from further criminal activity, and protect the public. Thus, Hamilton's ultimate sentence is reasonable, and we affirm. *See Snipes*, 611 F.3d at 872.

For the foregoing reasons, we affirm Hamilton's total sentence.

**AFFIRMED.**