[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16171
_____

D.C. Docket No. 1:09-cr-00241-WSD-ECS-11

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

versus

CHARLES NDHLOVU,
a.k.a. Soul,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 25, 2013)

Before DUBINA, Chief Judge, BLACK and ALARCÓN,* Circuit Judges.

PER CURIAM:

_____

* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Appellant Charles Ndhlovu raises five issues on appeal.  After careful review of the record and the parties' briefs, we affirm on all issues.

I.

Appellant first challenges the sufficiency of the evidence used to convict him on Counts Two, Three, and Five of the second superseding indictment for trafficking in counterfeit labels and felony copyright infringement.[1]  We review sufficiency of the evidence challenges de novo.  *United States v. Bacon*, 598 F.3d 772, 775 (11th Cir. 2010).  The jury's verdict is upheld unless, after viewing the evidence in the light most favorable to the government, no reasonable juror could have found guilt beyond a reasonable doubt.[2]  *Id.*

A.  *Count Two: Trafficking in Counterfeit Labels*

Count Two charged Appellant with trafficking in counterfeit labels and documentation, in violation of 18 U.S.C. § 2318(a) and (c)(3).  Appellant contends the evidence was insufficient because the Government failed to connect him with the production or distribution of any counterfeit labels.  Moreover, the FBI's

---

[1] Appellant was also charged with conspiracy to commit felony copyright infringement (Count One), and felony copyright infringement for conduct pertaining to another location during the 180-day period between June 2008 and December 2008 (Count Four).  The district court dismissed the conspiracy charge on the Government's motion.  The jury found Appellant not guilty as to Count Four.

[2] We note that the same standard of review applies to Appellant's challenge to the district court's denial of his motion for judgment of acquittal.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).  For the reasons discussed below, the district court did not err in denying Appellant's Fed. R. Crim. P. 29 motion.

2

fingerprint analysis failed to identify Appellant's fingerprints on any of the seized labels or paper inserts.

To convict Appellant under Count Two as charged, the Government needed to prove that he (1) knowingly trafficked (2) in labels, packaging, and other documentation accompanying or designed to accompany a phonorecord or motion picture, (3) which are counterfeit, and (4) that the sound recordings or motion pictures to which the counterfeit labels were designed to be affixed were copyright protected. *See* 18 U.S.C. § 2318(a) and (c)(3). Viewing the facts and circumstantial evidence in the light most favorable to the Government, a reasonable jury could find Appellant guilty on Count Two.

First, a reasonable jury could conclude Appellant committed the actus reus of the offense: trafficking in counterfeit labels and documentation for copyright-protected works. In December 2007, police videotaped a confidential informant purchasing counterfeit goods from Appellant's store on Donald Lee Hollowell Avenue (the Hollowell location) in Atlanta, Georgia. In January 2008, law enforcement executed a search warrant at Appellant's store, arresting Appellant and seizing over 6,500 counterfeit items. In May 2009, the FBI arrested Appellant at his home in Fairburn, Georgia, and discovered a cache of sophisticated digital

3

copying equipment, including multiple CD and DVD duplicating towers as well as several hundred CDs, DVDs, and photocopies of disc labels.[3]

Second, a reasonable jury could find Appellant possessed the requisite mens rea for the offense: that he acted knowingly.   Appellant's home, as well as the Hollowell location, were overrun with the indicia of trafficking in counterfeit labels.  Sophisticated, high-volume copying equipment and a considerable quantity of counterfeit labels, documentation, and packaging for copyrighted works were discovered at both locations.  Additionally, throughout 2008, investigators witnessed Appellant purchasing the "raw materials" for counterfeiting, *i.e.*, large quantities of blank CDs, blank DVDs, and cases for CDs and DVDs.  On 26 dates between early 2008 and April 2009, the FBI videotaped Appellant buying such materials from illicit vendors in the Atlanta area.  From this evidence, a reasonable jury could conclude Appellant was more than an unwitting participant in the trafficking of counterfeit labels.  Thus, Appellant's challenge to Count Two fails.

B. *Counts Three and Five: Felony Copyright Infringement*

Counts Three and Five charged Appellant with felony copyright infringement under 17 U.S.C. § 506 and 18 U.S.C. § 2319 for willfully reproducing, during a 180-day period, copyrighted works having a certain total retail value.  To convict Appellant under Counts Three and Five as charged, the

---

[3] At trial, the parties stipulated that Appellant was not authorized by the copyright holders to reproduce or distribute the identifying labels and documentation.

Government needed to prove that he (1) willfully infringed (2) a copyright (3) for purposes of commercial advantage or private financial gain (4) by reproducing or distributing (5) ten or more copies of one or more copyrighted works worth more than $2,500 in retail value (6) during any 180-day (six-month) period. *See* 17 U.S.C. § 506; 18 U.S.C. § 2319; *see also United States v. Dadamuratov*, 340 F. App'x 540, 545 (11th Cir. 2009).

1. Count Three

In Count Three, Appellant was charged with felony copyright infringement committed during the 180-day period between December 24, 2007, and June 21, 2008. Appellant contends the evidence was insufficient to convict him because the Government failed to prove the infringement was committed for "purposes of commercial gain." The Government established only that he had purchased counterfeit items in the past, but it did not show he produced or sold any counterfeit CDs or DVDs.

Viewed in the light most favorable to the Government, the evidence was sufficient to convict Appellant on Count Three. First, the jury could infer Appellant was guilty of the conduct underlying the offense: infringing a copyright by reproducing or distributing ten or more copies of one or more copyrighted works worth more than $2,500 in retail value. The police seized over 6,500

counterfeit discs at the Hollowell location that were attributed to Appellant. Each disc had a stipulated retail value of either $13.15 for CDs or $19 for DVDs.[4]

Second, a reasonable juror could infer Appellant conducted this operation for the six-month period charged in the indictment. Between December 24, 2007, and June 21, 2008, Appellant was seen or videotaped purchasing the raw materials necessary for high-volume counterfeit manufacturing. Appellant's raw materials vendor testified that, during that same period, Appellant was a "regular customer," sometimes purchasing large quantities of blank CDs and DVDs, cases, and labeling paper on a weekly basis.

Third, a jury could conclude Appellant infringed copyrights and "distributed" counterfeit items for purposes of financial gain. Such a purpose may be shown through sales or solicitation. *See United States v. Shabazz*, 724 F.2d 1536, 1540 (11th Cir. 1984). Here, law enforcement videotaped Appellant bringing the confidential informant into the Hollowell location, and the informant emerging shortly thereafter with 80 counterfeit items. It was therefore reasonable to conclude Appellant solicited or sold counterfeit items, and thus distributed them for financial gain.

---

[4] At trial, the parties stipulated that many of the items seized were counterfeit. For those items that were not stipulated as counterfeit, we find that as to Counts Three and Five the Government sufficiently proved those items were counterfeit reproductions of copyrighted works.

6

Finally, a jury could deduce Appellant's conduct was "willful." Willfulness means the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991); *United States v. Kim*, 307 F. App'x 324, 326 (11th Cir. 2009) (holding purposefulness and awareness of illegality supports a finding of willful infringement). Willful infringement may be established from proof that the defendant consciously and actively participated in a counterfeiting enterprise with awareness of its illegality. *See Dadamuratov*, 340 F. App'x at 545–46.

Here, sufficient evidence supported a finding that Appellant consciously and actively participated in counterfeiting despite being aware it was wrongful. First, Appellant sold counterfeit items in a clandestine fashion, suggesting he intended to conceal his activities from law enforcement. At trial, witnesses testified that Appellant's store, from which he was videotaped selling counterfeit items, bore no external markings or advertisements that would indicate it sold CDs or DVDs, nor did it display a business license. Second, Appellant sold the counterfeit items at prices well below retail value, suggesting he knew they were not lawful copies. Although the informant was given only $150 with which to make the controlled buy, he left the store with approximately 80 counterfeit CDs and DVDs labeled with popular movie and music titles. This indicates an average sale price of less than $2 per counterfeit item. It was not unreasonable for a jury to conclude

7

Appellant voluntarily and intentionally infringed copyrights with full awareness of its illegality. Therefore, the Government sufficiently proved each element of felony copyright infringement as charged under Count Three.

2. Count Five

Count Five charged Appellant with felony copyright infringement from December 22, 2008, until May 21, 2009. Appellant contends the evidence was insufficient because the Government failed to prove he "reproduced or distributed" phonorecords or motion pictures. His fingerprints were not found on any of the seized items and he was not the only person living at his home at the time of his arrest in May 2009.

Viewed in the light most favorable to the Government, the evidence was sufficient to convict Appellant on Count Five. First, the jurors could infer Appellant committed the actus reus of the offense: infringing a copyright by reproducing or distributing ten or more copies of one or more copyrighted works worth more than $2,500 in retail value. The evidence showed Appellant's home doubled as a counterfeit workshop. Appellant had two multi-tray duplicating towers in his bedroom closet, and his garage contained more duplicating towers as well as counterfeit artwork and spindles of apparent counterfeit disc masters.

Second, the jury could infer Appellant conducted this operation for the six-month period charged in the indictment. Between December 22, 2008, and May

8

21, 2009, Appellant was seen or videotaped purchasing the raw materials necessary for high-volume counterfeit manufacturing.  Law enforcement videotaped Appellant buying 88 boxes of raw counterfeiting materials, each box containing as many as 600 blank discs.  According to his associate, Scott Ahn, Appellant regularly purchased raw materials at either Ahn's warehouse or in various parking lots in the greater Atlanta area.  Coupled with Appellant's sophisticated counterfeiting workshop, a reasonable jury could infer Appellant was engaged in this conduct between the dates charged in the indictment.

Third, evidence supported an inference that Appellant reproduced or distributed counterfeit items for "commercial advantage or private financial gain." The government need not prove a defendant actually made a profit to show he acted for purposes of financial gain.  *See United States v. Cross*, 816 F.2d 297, 301 (7th Cir. 1987). Instead, the requisite intent is established when a jury could reasonably find a defendant violated copyrights "to hopefully or possibly make a profit." *Shabazz*, 724 F.2d at 1540 (internal quotation marks omitted).  Here, based on the extensive equipment found at his home and his large-scale purchasing of blank media, it was reasonable to conclude Appellant "hope[d]" to "make a profit." *Id.*

Finally, a reasonable jury could conclude Appellant's infringement was "willful."  Willful infringement is shown when a jury could infer the defendant

9

knew his conduct was illegal or otherwise wrongful. *See Cross*, 816 F.2d at 300–01. In these circumstances, a prior arrest for similar or related activities may establish the defendant was aware the law prohibited his conduct. *See, e.g.*, *Kim*, 307 F. App'x at 326. Also, control or management of the premises in which the counterfeit items were found strongly suggests willful infringement. *See, e.g.*, *Dadamuratov*, 340 F. App'x at 545–46.

Here, Appellant had been arrested for selling counterfeit items at his store on Hollowell Avenue in January 2008, over a year before his arrest in May 2009. Although the January 2008 arrest did not immediately lead to a prosecution, it allowed for the reasonable inference that Appellant was aware copyright infringement was illegal. Additionally, Appellant owned the home in which he was arrested in 2009—the same home that contained abundant indicia of high-volume counterfeiting. It was not unreasonable for the jury to infer Appellant acted willfully given that he controlled the site of the counterfeiting and had been made aware copyright infringement was proscribed by law. Thus, as with Counts Two and Three, a reasonable jury could find the Government proved each element of felony copyright infringement as charged under Count Five.

## II.

Next, Appellant challenges the district court's rejection of his requested jury instructions. He claims the pattern jury instructions the district court actually

10

issued were deficient in various ways.  The pattern instructions allegedly did not make clear that expert testimony was "opinion" testimony the jurors were free to disregard.  The pattern instructions purportedly failed to inform the jury it could not draw any inferences from Appellant's decision not to testify.  Lastly, the pattern instructions did not state explicitly that reasonable doubt could be found from a *lack* of evidence.

Ordinarily, this Court reviews a district court's refusal to give a requested jury instruction only for abuse of discretion.  *United States v. Sirang*, 70 F.3d 588, 593 (11th Cir. 1995).  But when, as here, a defendant fails to object to a particular instruction, we review only for plain error.  *United States v. Felts*, 579 F.3d 1341, 1343 (11th Cir. 2009).  As a threshold matter, the plain error standard requires the demonstration of *an error*.  *Id.* at 1343–44.  The district court, however, committed no error in issuing Eleventh Circuit pattern jury instructions.  The pattern instructions correctly stated the law on each relevant point, and thus there can be no doubt the jury's deliberations were properly guided.  *See, e.g.*, *United States v. Beasley*, 72 F.3d 1518, 1525 (11th Cir. 1996).  Although Appellant preferred a different formulation, a district court need not "use the exact words and phrasing requested by defense counsel in its jury charge."  *United States v. Gonzalez*, 975 F.2d 1514, 1517 (11th Cir. 1992).  Thus, Appellant has not shown plain error.

III.

Appellant argues his trial counsel was unconstitutionally ineffective according to the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). This Court, however, generally does not review ineffective assistance of counsel claims on direct appeal, unless the record is sufficiently developed with evidence relevant to the merits of the claim. *See, e.g.*, *United States v. Franklin*, 694 F.3d 1, 8–9 (11th Cir. 2012); *United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002). Appellant's case is no exception to this rule. At this point, the record is insufficiently developed and we decline to address his ineffective assistance of counsel claims.

IV.

Appellant challenges the methodology and data underlying the district court's calculation of his offense level under the Sentencing Guidelines. Appellant also challenges the substantive reasonableness of his sentence.

At sentencing, the district court set Appellant's offense level at 24 based on the following logic. Pursuant to U.S.S.G. § 2B5.3(a), Appellant's base offense level was 8. Pursuant to § 2B5.3(b)(1) and § 2B1.1, the district court applied a 12-level enhancement, because Appellant's infringement amount exceeded $200,000. The district court applied a two-level enhancement under § 2B5.3(b)(3)(A) based on Appellant's manufacture of infringing items. Appellant received another two-

12

level enhancement pursuant to § 2B5.3(b)(2) because his offense involved the reproduction of a pre-release work.

Appellant argues that, among other things, the district court relied on speculative evidence and the wrong criterion of fair market value in determining the infringement amount. Ordinarily, we review the district court's factual findings—including infringement amounts—for clear error, its interpretation of the Sentencing Guidelines and application of the Guidelines to the facts de novo, *United States v. Barrington*, 648 F.3d 1178, 1194–95, 1197 (11th Cir. 2011), and the reasonableness of a sentence for abuse of discretion, *Gall v. United States*, 552 U.S. 38, 49 (2007). However, we need not review such issues when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence was substantively reasonable. *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006).

Here, both of the *Keene* conditions are met. First, the district court indicated unequivocally that in order to avoid unwarranted disparities and to deter high-volume counterfeiting "this is the sentence" it "would impose even if . . . wrong in the guidelines." And, so as to remove all doubt, the district court judge declared, "[i]n fact, I'm sure of that."

Second, Appellant has not carried the burden of showing that his 51-month sentence was substantively unreasonable. *See United States v. Talley*, 431 F.3d

13

784, 788 (11th Cir. 2005).  Appellant's 51-month sentence was within, and at the low end of, his guidelines range of 51 to 63 months.  *See United States v. Tobin*, 676 F.3d 1264, 1310 (11th Cir. 2012) (sentencing within the guidelines range indicates substantive reasonableness).  Appellant's 51-month sentence was also well below the statutory maximum of 25 years' imprisonment.  *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (sentencing below the statutory maximum indicates substantive reasonableness).  Thus, because both *Keene* conditions are met, Appellant's sentencing challenges fail.

## V.

Finally, Appellant contends that even if each alleged error is independently insufficient to warrant reversal, all of them taken together denied him a fair trial. Cumulative error exists only where the defendant "establish[es] that the combined errors affected his substantial rights."  *United States v. Foley*, 508 F.3d 627, 638 (11th Cir. 2007).  Here, however, Appellant has not shown even a single error committed at trial.  Accordingly, Appellant cannot establish cumulative error.  *See, e.g.*, *United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir. 2011).

## VI.

For the foregoing reasons, Appellant's convictions and sentence are affirmed.

**AFFIRMED.**

14