[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12104
Non-Argument Calendar

_____

D.C. Docket No. 4:19-cr-10017-KMM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DONALD HOWARD CONKRIGHT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 11, 2021)

Before JILL PRYOR, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Donald Conkright appeals his convictions and sentence for conspiracy to commit money laundering and money laundering. After careful review, we affirm.

I.

Conkright was one of several co-conspirators who defrauded a Texas school district. The school district contracted with a construction company to, among other things, build a new elementary school. A group of co-conspirators impersonated a senior employee of the construction company and convinced the school district to wire the co-defendants almost $2 million in payments intended as compensation for construction work. The wires were sent to a bank account in Conkright's name. Upon receipt of the funds, Conkright immediately began spending, withdrawing, and transferring the money.

A grand jury indicted Conkright on one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); one count of money laundering by concealment, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and two counts of money laundering by engaging in transactions derived from a criminal activity, in violation of 18 U.S.C. § 1957. Conkright pled not guilty and proceeded to a jury trial. His defense, which is relevant to this appeal, was that he was one of several suitors (his co-conspirators) for a woman who purported to be an heiress to a fortune and whose money was handled by a trust that had global business interests. Conkright maintained that he believed he was managing the heiress's

money when he committed the offense conduct and therefore did not knowingly commit any crime.

Before trial, Conkright notified the district court that he intended to call an expert witness to testify about his mental condition at the time of the offenses. The government filed a motion to exclude the expert's testimony under Rules 403 and 704 of the Federal Rules of Evidence. The government argued that the expert's testimony was "likely to be classic justification and mitigation evidence, not true lack-of-mens-rea evidence." Doc. 26 at 8.[1] The government also filed a motion to exclude certain voicemail messages between Conkright's co-conspirators and unindicted third parties, arguing that they were irrelevant and may confuse the jury, in violation of Rules 401, 402, and 403 of the Federal Rules of Evidence.

Conkright responded in opposition to the government's motions. As to his proposed expert testimony, Conkright argued that his expert would in fact testify that he lacked the requisite mens rea. As to the voicemail messages, he argued that they provided "extremely relevant" context to his defense, would not confuse the jury, and were "inextricably intertwined with the other phone calls and voicemail evidence" in the case. Doc. 34 at 2, 4 (internal quotation marks omitted). Conkright did not argue that exclusion of the expert's testimony or the voicemail messages would be unconstitutional.

---

[1] "Doc." numbers refer to the district court's docket entries.

A magistrate judge denied without prejudice both motions in all respects relevant to this appeal, concluding that the motions were better decided in the context of trial. At trial, Conkright proffered what the expert would testify to, and the district court asked the expert to testify outside the jury's presence. The expert testified that Conkright's personal history and mental health challenges made him more susceptible to being manipulated into participating in conspiracies. The government renewed its objections, and Conkright renewed his arguments in support of permitting the expert to testify. Again, Conkright did not argue that excluding the expert's testimony would be unconstitutional. Reasoning that the evidence had the potential to confuse the jury, the district court granted the government's motion and excluded the expert's testimony.

When the issue of the voicemail messages came up at trial, Conkright renewed his argument that messages between co-conspirators and unindicted third parties contextualized the offenses for which he was charged. He did not argue that exclusion of the messages would violate the Constitution. The district court excluded the voicemail messages except to the extent they directly involved Conkright.

Conkright testified in his defense. He testified that he developed a relationship with a woman named Lola Mullins online and that, after a year of communicating, she told him she would receive a large inheritance if she got

4

married.  He testified that Mullins told him that the money was held in a trust and tied up in one or more businesses.  He testified that he was going to be named "acting CEO and pay the existing trust bills off to bring the company back up to zero account," at which point he and Mullins would marry and get the inheritance. Doc. 94 at 16.  The alleged trustee, David Sanders, instructed Conkright to open several bank accounts "[t]o help pay off the bills."  *Id.* at 18.

Conkright testified that he did these things to be with Mullins, but that he thought the "whole time" that he may have been money laundering and told his co-conspirators that what they were doing "look[ed] like fraud."  *Id.* at 53, 58.  He acknowledged sending text messages to Lola telling her that he would "do jail time on this, bad checks and money laundering," and that he had "already broken the law."  *Id.* at 56.  And he acknowledged making extravagant purchases with the money in his bank accounts, including Rolex watches and a BMW car.

The jury found Conkright guilty on all counts.  In anticipation of sentencing, the probation office prepared a presentence investigation report ("PSR").  As relevant to this appeal, the PSR applied a two-level increase to his base offense level for an offense involving sophisticated laundering.  *See* U.S.S.G. § 2S1.1(b)(3).  Based on a total offense level of 27 and a criminal history category of I, the PSR calculated Conkright's guidelines range as 70 to 87 months' imprisonment.

Conkright objected to the sophisticated laundering enhancement, arguing that his personal participation was not sufficiently sophisticated.  The district court overruled his objection and applied the enhancement.  The government recommended a sentence of 71 months' imprisonment, representing that it was the "high end of the sentencing range if the sophisticated [laundering] enhancement did not apply."  Doc. 90 at 34.  After considering the sentencing factors set forth in 18 U.S.C. § 2553(a), the district court accepted the government's recommendation, "stat[ing] for the record that in the event that the special enhancement did not apply, [the court] would have applied the same sentence that [it] intend[ed] to impose today, in any event."  *Id.* at 35.

This is Conkright's appeal.

## II.

Generally we review *de novo* questions of constitutional law, but we review such a question only for plain error when a party raises it for the first time on appeal.  *United States v. Nash*, 438 F.3d 1302, 1304 (11th Cir. 2006).  Plain error requires:  (1) an error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings.  *Id.*  A plain error affects a defendant's substantial rights if he can show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.  *United States v. Reed*, 941

F.3d 1018, 1021 (11th Cir. 2019). We consider the entire record when determining whether an error was plain. *Id.* When a defendant cannot meet one plain-error prong, we need not reach the other prongs. *United States v. Carpenter*, 803 F.3d 1224, 1238-39 (11th Cir. 2015).

We review the district court's application of the Sentencing Guidelines *de novo*. *United States v. Newman*, 614 F.3d 1232, 1235 (11th Cir. 2010). An error in the district court's calculation of a defendant's guidelines range is reversible absent harmless error. *United States v. Scott*, 441 F.3d 1322, 1329–30 (11th Cir. 2006). An error in calculating a defendant's guidelines range is harmless if the district court stated on the record that it would impose the same sentence even if it decided guidelines calculation issues in the defendant's favor and, assuming the lower range applied, the final sentence was reasonable taking into account the factors set forth in 18 U.S.C. § 3553(a).[2] *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006).

### III.

Conkright challenges his convictions, arguing that the district court's exclusion of expert testimony regarding his mental health and of voicemail messages between co-conspirators and unindicted third parties violated his right to a fair trial in violation of the Fifth and Sixth Amendments. He also challenges his

---

[2] *See infra* Part III.B.

sentence, arguing that the district court reversibly erred in applying the sophisticated laundering enhancement under U.S.S.G. § 2S1.1(b)(3).  For the reasons that follow, we disagree.

## A. Conkright's Convictions

Conkright argues that the expert testimony and voicemail messages would have negated the requisite mens rea for his offenses, and that the district court's decision to exclude the evidence deprived him of the opportunity to present such evidence in violation of the Fifth and Sixth Amendments.[3]  Conkright did not advance this challenge in the district court, so we review only for plain error. *Nash*, 438 F.3d at 1304.

The Sixth Amendment guarantees defendants the right to have compulsory process for obtaining witnesses in their favor.  U.S. Const. amend. VI.  "Implicit in this right—as well as in the basic notion of due process of law in general . . . —is the idea that criminal defendants must be afforded the opportunity to present evidence in their favor."  *United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004) (citing U.S. Const. amend. V) (internal quotation marks omitted).  A defendant does not receive a fair trial if the evidence excluded is "material in the

---

[3] Conkright also argues, for the first time in his reply brief, that the district court abused its discretion in its analysis under the Federal Rules of Evidence.  Issues raised for the first time in a reply brief are, however, waived. *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).  We therefore do not address this argument.

sense of a crucial, critical, highly significant factor." *Id.*

Even assuming Conkright could show that the district court erred, and that the error was plain, he cannot show that it affected his substantial rights. Conkright testified that he believed he was laundering money, and the jury was permitted to infer his mens rea from his testimony. *See Reed*, 941 F.3d at 1021 ("[T]he jury could have inferred that Reed knew he was a felon from his stipulation and from his testimony that he *knew* he was not supposed to have a gun."). Thus, Conkright cannot show any reversible error as regards his convictions, and we affirm them.

## B. Conkright's Sentence

Conkright argues that the district court erred in applying the sophisticated laundering enhancement, explaining that he acted at the direction of others, never solicited funds by using a fraudulent email or name, and "never set up any kind of shell company to hide what was going on." Appellant Br. at 37. "He simply opened bank accounts in his own name" and then made withdrawals and purchases, all as directed by Mullins and Sanders. *Id.* However, Conkright does not acknowledge in his brief the district court's express statement that it would have imposed a 71-month sentence even in the absence of the challenged enhancement. Under these circumstances, we will affirm the sentence, provided it would have been reasonable under the more-favorable guidelines calculation.

9

*Keene*, 470 F.3d at 1349.  Our task is to determine whether the court's sentence was reasonable.[4]  For that inquiry we "assum[e] exactly the same conduct and other factors in the case, but us[e] an advisory range" that would have applied had the district court decided the contested issue in the defendant's favor.  *Id.* at 1349–50.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, *United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (en banc), and examine the sentence's reasonableness under the totality of the circumstances, *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). The district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct.  18 U.S.C. § 3553(a)(2).  In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the

---

[4] Conkright arguably has waived any potential argument that his sentence was unreasonable by failing to argue its reasonableness on appeal.  *See United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004).  As we explain above, however, Conkright's challenge fails on the merits.

Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

Even if the district court had used Conkright's preferred guidelines range as the lodestar for sentencing, the resulting sentence of 71 months' imprisonment—a within-guidelines sentence—would have been within the district court's discretion to impose. The district court weighed on the one hand Conkright's "history and characteristics," explaining that he had dome "some good things," including caring for neighbors and friends. Doc. 90 at 26–27. On the other hand, the court weighed "the harm that he caused" to the school district—a loss amount equal to 36 teachers' salaries or "feeding 16,000 students 798,286 lunches." *Id.* at 27–28. Given that the district court carefully weighed the § 3553(a) factors to arrive at a sentence that was within the more favorable guidelines calculation, the sentence the court imposed was reasonable. Thus, any error in the guidelines calculation was harmless, and we affirm Conkright's sentence.

## IV.

For the foregoing reasons, we affirm Conkright's convictions and sentence.

**AFFIRMED.**

11