[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10758

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSE MANUEL GOMEZ-GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00032-CEH-AAS-3

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jose Manuel Gomez-Gomez appeals his sentence of 120 months' imprisonment for offenses stemming from the trafficking of cocaine aboard a vessel subject to the jurisdiction of the United States.  He challenges the district court's calculation of the weight of the contraband attributable to him and the denial of a reduced sentence for his allegedly minor role in the conspiracy.  Yet any error involving the drug weight is harmless, and the district court did not clearly err in denying a minor role reduction.  After careful review, and with the benefit of oral argument, we affirm Gomez-Gomez's sentence.

## I.    Background

On January 24, 2019, the United States Coast Guard intercepted a stateless vessel in international waters— approximately 575 miles off the coast of Ecuador.  Gomez-Gomez was one of three mariners on board.  Coast Guard officers boarded the vessel and saw bales containing a white powdery substance on the deck that tested positive for cocaine.  A further search of the vessel uncovered 28 bales of cocaine, which the Coast Guard seized.  According to the government, the total weight of the cocaine—as measured aboard the Coast Guard Cutter Dependable just after the seizure—was 560 kilograms.

Later, a federal grand jury indicted Gomez-Gomez and his two co-defendants for possession of five or more kilograms of

cocaine with intent to distribute while on board a vessel subject to the jurisdiction of the United States, pursuant to 46 U.S.C. §§ 70503(a), 70506(a)–(b); 21 U.S.C. § 960(b)(1)(B)(ii) (Count 1), and aiding and abetting one another in the same, in violation of 46 U.S.C. §§ 70503(a), 70506(a)–(b), 21 U.S.C. § 960(b)(1)(B)(ii); 18 U.S.C. § 2 (Count 2). Gomez-Gomez pled guilty to both counts.[1]

   a. *Gomez-Gomez's First Sentencing*

   Gomez-Gomez was originally sentenced to the statutory minimum of 120 months' imprisonment on June 25, 2019. Section 2D1.1(c) of the Sentencing Guidelines provides a base offense level of 38 for a defendant who trafficked 450 kilograms or more of cocaine, but a base offense level of 36 for defendants who trafficked between 150 kilograms and 450 kilograms of cocaine. U.S.S.G. § 2D1.1(c)(1), (2). Despite a lack of record evidence establishing the weight of the cocaine, the district court took the government at its word that the net weight of the cocaine was greater than 450 kilograms.[2] The district court also denied Gomez-Gomez's request for a minor role reduction.

---

[1] The minimum term of imprisonment for each offense is 120 months and the maximum term is life. 21 U.S.C. § 960(b)(1)(B)(ii).

[2] After assigning a base offense level of 38, the district court reduced Gomez-Gomez's sentence based on the § 3552(a) factors and imposed a sentence of two concurrent terms of 120 months' imprisonment, followed by 5 years of supervised release.

Gomez-Gomez appealed his sentence, challenging the district court's finding that the net weight of the cocaine exceeded 450 kilograms, but he did not appeal the district court's denial of a minor role reduction. *See United States v. Gomez*, 818 F. App'x 907 (11th Cir. 2020). We vacated Gomez-Gomez's sentence, holding that the district court clearly erred by approximating the weight of the cocaine based on the government's stipulation with no factual basis. *Id.* at 909–10. We remanded with instructions for the district court to calculate the weight of the cocaine on record evidence. *Id.* at 910.

b. *Gomez-Gomez's Second Sentencing*

On remand, the probation office prepared a new PSI, which mentioned (for the first time) the existence of a laboratory report from a test of a representative sample of the cocaine seized and included photographs of the sample and the test results. Extrapolating from the test of the representative sample, the PSI reported that "the defendant is accountable for approximately 560 kilograms of cocaine." Two weeks after the government sent Gomez-Gomez's counsel the test results, his counsel notified the government that he wanted to retain an expert to analyze and weigh the drugs. The government, however, informed him the bulk of the cocaine—all but 10.5 kg—had been destroyed.

Gomez-Gomez was resentenced on March 4, 2021. At the hearing, he contended that the failure to notify him that the contraband evidence would be destroyed violated the district

court's scheduling order and his due process rights.   He also renewed his minor role reduction objection.

The district court held that the government met its burden of establishing that the net weight of the cocaine was 560 kilograms, based on the laboratory report and testimony from government witnesses at the hearing and rejected his due process argument.  It also denied Gomez-Gomez a minor role reduction after finding that Gomez-Gomez's role was no less important than his co-defendants, who were each hired to transport a large amount of cocaine and took turns driving and navigating the vessel.

The district court then resentenced Gomez-Gomez to two concurrent terms of 120 months' imprisonment followed by five years of supervised release.  Because the weight of the cocaine exceeded 450 kilograms, the district court assigned a base offense level of 38, but downward varied the sentence because of Gomez-Gomez's unimpressive role in the offense, his advanced age, his poverty, his lack of education, and his cooperation with the government.  The district court stated on the record, however, that the sentence "would be the same" regardless of "whether the base offense level was a 36 or a 38" (*i.e.*, whether the cocaine was less or greater than 450 kilograms).

Gomez-Gomez appeals his sentence, challenging the district court's calculation of the weight of the cocaine to determine his base offense level under U.S.S.G. § 2D1.1(c), and its decision not to award him a minor role reduction.

## II.    Standard of Review

We review a district court's factual determination of the drug quantity attributable to a defendant for clear error. *United States v. Azmat*, 805 F.3d 1018, 1046 (11th Cir. 2015). Likewise, we consider "whether a defendant qualifies for a minor role adjustment under the Guidelines [to be] a finding of fact that will be reviewed only for clear error." *United States v. Rodriguez De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (en banc). "Clear error review is deferential, and 'we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (quoting *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010)). We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1255 (11th Cir. 2015).

## III.    Discussion

Gomez-Gomez argues that the district court erred in determining the weight of the cocaine attributable to him to determine his base offense level under U.S.S.G. § 2D1.1(c). He claims that destruction of the representative sample and bulk contraband violated the district court's scheduling order and his due process rights and that the net weight of the cocaine was actually 447 kilograms.[3] We need not address any of Gomez-

---

[3] Gomez-Gomez's arguments about the scheduling order and his due process rights mirror his argument about drug weight—namely, that if the cocaine

Gomez's challenges to the weight of the cocaine and his base offense level under U.S.S.G. § 2D1.1(c) because any alleged error was harmless.

A district court's alleged error in sentencing a defendant is harmless if the court states on the record that a disputed guideline calculation did not matter to the sentence imposed and if the ultimate sentence imposed is substantively reasonable. *United States v. Keene*, 470 F.3d 1347, 1348–50 (11th Cir. 2006). Accordingly, we assume the district court erred, calculate the guideline range without the error, and then analyze whether the sentence would be substantively reasonable under the properly calculated guideline range. *Id.*

U.S.S.G. § 2D1.1(c)(1) provides for a base offense level of 38 for the unlawful manufacturing, importing, exporting, or trafficking of "450 KG or more of Cocaine." But an offense involving between 150 and 450 kilograms of cocaine receives a base offense level of 36. *Id.*

Here, the district court stated on the record that its sentence "would be the same" regardless of "whether the base offense level was a 36 or a 38"—in other words, even if the government failed to show the net weight of cocaine attributable to Gomez-Gomez was

weighed less than 450 kilograms, the district court would have assigned him a base offense level of 36 rather than 38. *See* U.S.S.G. § 2D1.1(c)(1).

greater than 450 kilograms the district court would still sentence him to 120 months' imprisonment.

As to substantive reasonableness, had the district court applied a base level offense of 36, Gomez-Gomez's total offense level would have been 29. With an offense level of 29 and a criminal history category of I, Gomez-Gomez's guidelines range would have been 87 to 108 months. *See* U.S.S.G., Ch. 5, Pt. A. Gomez-Gomez's sentence is reasonable for two reasons. First, the 120-month sentence, while 12 months above the high end of the unenhanced guidelines, was well below the statutory maximum of life. *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008); 21 U.S.C. § 960(b)(1)(B)(ii). Second, the record shows that the district court evaluated the § 3553(a) factors in imposing its sentence, considering Gomez-Gomez's relatively advanced age, his poverty as a youth, his role in the offense, the need to avoid unwarranted sentencing disparities between him and his co-defendants, and the amount of cocaine involved. It also stated that a sentence of 120 months is "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." Accordingly, assuming Gomez-Gomez's base offense level was 36, his sentence of 120 months' imprisonment was substantively reasonable, and any error in calculating the weight of the cocaine was harmless.

Gomez-Gomez also claims the district court erred in failing to award him a two-level reduction for playing only a minor role in the drug trafficking conspiracy.[4] We disagree.

_____

[4] The government claims that Gomez-Gomez is barred from raising this issue on appeal under the law of the case doctrine because Gomez-Gomez failed to raise the issue in his first appeal. We disagree. "The law of the case doctrine, self-imposed by the courts, operates to create efficiency, finality, and obedience within the judicial system so that an appellate decision binds all subsequent proceedings in the same case." *United States v. Amedeo*, 487 F.3d 823, 829 (11th Cir. 2007) (quotations omitted). However, a mandate providing for a general vacatur of a sentence requires resentencing de novo, akin to when we vacate a defendant's criminal conviction. *United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010). In contrast, when we issue a limited mandate with particular remand instructions, the district court is restricted to the issues outlined in the mandate. *United States v. Davis*, 329 F.3d 1250, 1252 (11th Cir. 2003). Unlike a general vacatur, a limited mandate does not "nullify all prior proceedings." *Id.* (quotations omitted).

The law of the case doctrine is inapplicable here because our mandate in *Gomez I* provided for a general, rather than limited, vacatur of Gomez-Gomez's sentence, permitting the district court to resentence him de novo. *See* 818 F. App'x at 910 ("[W]e vacate Gomez's 120-month total sentence and remand his case to the District Court for resentencing consistent with this opinion."). Accordingly, on remand the probation office prepared a new PSI, Gomez-Gomez made a slew of objections (including an objection to the denial of a minor role adjustment), and the district court considered each objection de novo pursuant to our instructions. Consequently, even if the law of the case doctrine would otherwise apply, Gomez-Gomez's claims arise from the district court's second de novo sentencing and therefore could not have been brought in earlier proceedings. Thus, the law of the case doctrine does not bar Gomez-Gomez's minor role adjustment argument, and we consider it on appeal.

The Guidelines provide for a two-level reduction in a defendant's offense level for being a "minor participant" in the criminal conduct. U.S.S.G. § 3B1.2. The Guidelines commentary explains that a minor participant is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.*, comment. (n.5). A district court may apply the minor role reduction based on a preponderance of the evidence. *Cruickshank*, 837 F.3d at 1192. In determining whether a defendant qualifies for a minor role adjustment, the district court must assess "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [the] relevant conduct." *Rodriguez De Varon*, 175 F.3d at 940–41.

Gomez-Gomez has failed to show the district court clearly erred in finding he was not entitled to a minor role adjustment. In analyzing the issue, the district court assessed Gomez-Gomez's role in the relevant conduct, noting that Gomez-Gomez was hired to deliver drugs and, at times, navigated and piloted the vessel. The district court also found that Gomez-Gomez's role in the conspiracy was the same as the other two mariners arrested aboard the vessel—the co-defendants "all held a similar role, and that role was to transport the drugs safely to a destination." Gomez-Gomez points to no evidence undermining these findings. Accordingly, Gomez-Gomez fails to carry his burden to demonstrate that the district court clearly erred by finding Gomez-Gomez did not qualify for a role reduction.

★      ★      ★

For these reasons, we affirm Gomez-Gomez's sentence.

**AFFIRMED.**