[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13097

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARVIN GREEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20078-KMM-1

_____

Before WILSON, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Marvin Green, a felon, pled guilty to one count of possessing a firearm in violation of 18 U.S.C. § 922(g)(1).  Following his guilty plea, the district court sentenced Green to 100 months' imprisonment, followed by 3 years' supervised release.  Green appeals, arguing that the district court erred by applying a four-level enhancement to his offense level under U.S.S.G. § 2K2.1(b)(6)(B), which applies to defendants who "possessed any firearm . . . in connection with another felony offense."  Green also argues that this error was not harmless under *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006), because the district court did not make a valid *Keene* statement.  After careful review, and with the benefit of oral argument, we affirm Green's sentence.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2021, a police sergeant observed Marvin Green riding his bike.  The officer recognized Green, who was carrying two backpacks, from the latter's outstanding arrest warrant for the battery of a child.  The sergeant arrested Green and searched the backpacks he was carrying, one of which contained a zippered pouch holding a handgun and two magazines with twenty rounds of ammunition.  As it turned out, the backpack, zippered pouch, gun, and ammunition had been stolen from a man's truck two days prior.  Upon further investigation, officers discovered that

CCTV video from December 22, 2021, depicted Green wearing the same clothes he had been wearing when arrested and biking around the burglarized truck near the time of the reported burglary. According to the footage, Green initially circled the truck without a backpack, then biked outside of the surveillance frame before reappearing in a different surveillance video a short time later carrying a backpack.

Green was charged with one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Pursuant to a plea agreement, Green pled guilty to the single count and agreed to a factual proffer.

Green's presentence investigation report ("PSI") recommended that Green receive a ten-year sentence. The PSI calculated a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because Green had been convicted in the past of at least two violent felonies. The PSI next increased the score by two levels under § 2K2.1(b)(4)(A) because the firearm had been stolen. Finally, the PSI added four levels under § 2K2.1(b)(6)(B), which increases a defendant's offense level by four if the defendant "used or possessed any firearm or ammunition in connection with another felony offense," here the burglary of a truck. After subtracting three levels under § 3E1.1(a) and (b) for acceptance of responsibility and timely notifying the government of his intention to plead guilty, the probation officer calculated a total offense level of 27. The PSI then listed Green's criminal history and determined that he fell under criminal-history category IV based on his seven criminal-history

points.  Included in his criminal history was a conviction for abuse of "an elderly person or disabled adult."  Green also faced a pending charge for child abuse involving an unprovoked attack on a three-year-old.  The PSI determined that Green's guideline range was 100 to 125 months' imprisonment.  However, under § 5G1.1(a) the high end of the range was reduced to 120 months because the statutory maximum for the offense was 10 years.

Green filed four objections to the PSI, only one of which is relevant on appeal.  Green objected to the probation officer's application of the four-level enhancement under § 2K2.1(b)(6)(B).  Relying on Application Note 14(A) to § 2K2.1, Green argued that the enhancement required that the relevant firearm "facilitated or had the potential of facilitating another felony offense."  According to Green, his possession of the firearm at the time of his arrest could not have facilitated or had the potential to facilitate the truck burglary because the burglary had been completed two days prior.

At sentencing, the district court addressed the issue of § 2K2.1(b)(6)(B)'s application, explaining,

> Well, I think first of all we have to start with the text of the guideline provision itself.  The commentary is informative, it's certainly not controlling.  It posits different—there are different commentary notes that posit different situations.  So I think if there's no further argument on that, I'm satisfied that the Probation Office has correctly applied the enhancement. And I'll overrule the objection.

Before moving on to the next objection, the district court added:

> Let me also say now for appellate review purposes in the event this issue is taken up on appeal, that in view of the fact of this objection and the Court's ruling on it, the Court would nonetheless impose a reasonable sentence as an alternative that is consistent with the Court's imposition of sentence under the guidelines so that in the event, if for some reason that I have been found to be wrong, you have the benefit of knowing that and the Circuit has the benefit of knowing that the Court would impose the same sentence post-appeal as a reasonable sentence nonetheless.

The district court sustained one of Green's objections but overruled the others, arriving at a total offense level of 23 and a guideline range of 70 to 87 months.

Green allocuted, expressing his remorse for his crime and promising that he would resume taking medication for his mental health issues. After the allocution, Green and the government each presented arguments as to how Green should be sentenced under the 18 U.S.C. § 3553(a) factors. Green requested a sentence at the bottom end of the guideline range (70 months), because he was homeless and was not on his medication at the time of his crime. In its turn, the government asked for a sentence at the top end of the guidelines (87 months), explaining that such a sentence would be sufficient but not greater than necessary to satisfy the § 3553(a) factors. The government added that, because of Green's mental health issues, family circumstances, and homelessness, it was not seeking an upward variance or departure.

When the parties finished, the district court explained that it had considered the § 3553(a) factors, specifically, the nature of the offense, Green's history and characteristics, the need to promote respect for the law, and the importance of deterrence. The district court pointed out that, despite Green's youth, he had already managed to land in criminal history category IV, and his mental health issues were a concern both for himself and the public safety. The district court expressed particular concern with Green's "battery on some of the most vulnerable in our society, the elderly as well as the infants," and stated, "that really does go to justification for an upward departure and downward variance." It then sentenced Green to an above-guideline sentence of 100 months' imprisonment, followed by 3 years' supervised release. Green preserved the objections he made at the hearing and also objected to the substantive reasonableness of the sentence.

This appeal followed. On appeal, Green renews his objection to the § 2K2.1(b)(6)(B) enhancement and asserts that the district court's error in applying the enhancement is not harmless under our decision in *Keene*.

## II.    STANDARD OF REVIEW

"We review a district court's interpretation of the Sentencing Guidelines and application of the Guidelines to the facts de novo, and we review the district court's findings of fact for clear error." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). "A district court's determination that a defendant possessed a gun 'in connection with' another felony offense is a finding of fact

22-13097              Opinion of the Court                    7

that we review for clear error." *United States v. Bishop*, 940 F.3d 1242, 1250 (11th Cir. 2019). "A factual finding is clearly erroneous when, upon review of the evidence, we are left with a definite and firm conviction a mistake has been made. The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence." *Dimitrovski*, 782 F.3d at 628 (internal citation omitted).

"We review unpreserved sentencing objections only for plain error." *United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019). To establish plain error, a petitioner must show: (1) that there is error, (2) that the error is "plain," (3) that it "affect[s] substantial rights," and (4) that it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003) (first quoting *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original), and then quoting *Johnson v. United States,* 520 U.S. 461, 467 (1997) (alteration in original)).

When "a decision either way will not affect the outcome of" a sentencing, it is unnecessary for us to decide it. *Keene*, 470 F.3d at 1348. Under *Keene*, "we need not review an issue when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020).

## III.    ANALYSIS

On appeal, Green argues that he is not eligible for a four-level enhancement under § 2K2.1(b)(6)(B) because, even if he stole

a gun during the course of his burglary, he did not possess that gun "in connection with" the burglary. Green also argues that, if he is correct about the enhancement, the district court's error in applying the enhancement is not rendered harmless under *Keene*, because the district court failed to enunciate a legally valid *Keene* statement. We address each argument in turn.

### A.    The Four-Level Enhancement Under U.S.S.G. § 2K2.1(b)(6)(B)

Section 2K2.1(b)(6)(B) provides:

> If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

During sentencing, Green relied on the guideline commentary and maintained that his possession of the gun had not been "in connection with" any burglary because it had not facilitated said burglary. The government responded that the plain language of the guideline did not include the terminology of "facilitation," and a different provision in the commentary supported application of the enhancement to Green's offense. Reasoning that it had to "start with the text of the guideline provision itself," the district court concluded that the enhancement applied and overruled Green's objection.

On appeal, Green reiterates his position that the enhancement does not apply because his possession of the firearm on December 24, 2021, could neither have facilitated nor had the potential to facilitate the burglary that occurred on December 22, 2021. The government answers that "in connection with" is an expansive term and that Green possessed the firearm "in connection with" the burglary because it was the fruit of that burglary. The government adds that, even if § 2K2.1(b)(6)(B) requires that a defendant's possession of a gun facilitate or have the potential to facilitate a felony, a firearm taken in the course of a burglary satisfies that standard. For proof of both points, the government cites *United States v. Young*, 115 F.3d 834 (11th Cir. 1997), where we affirmed the application of § 4B1.4(b)(3)(A)—which applies "if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or a controlled substance offense, as defined in § 4B1.2(b)"— in a case where a defendant stole, but did not use, a gun during the course of a burglary. *Id*. at 836.

We recently addressed the meaning of "in connection with" in § 2K2.1(b)(6)(B). In *United States v. Brooks,* 112 F.4th 937, 950 (11th Cir. 2024), we held that "a defendant possesses a firearm 'in connection with another felony offense,' § 2K2.1(b)(6)(B)—even if the firearm itself is the 'fruit' of the other offense—if it facilitates, or has the potential of facilitating, the other offense." As we explained in that case, though a defendant may possess a gun "in connection with" another felony when the gun is the fruit of that felony, being the fruit of a felony is not alone sufficient to satisfy the enhancement. *Id*. at 951. Instead, the gun must also "facilitate—

or have the potential to facilitate—the other felony." *Id.* Thus, it is not enough to say that Green's firearm was the fruit of his burglary without also establishing that it facilitated or had the potential to facilitate said burglary.

That being said, the government is correct that mere possession may be sufficient to establish a potential to facilitate a crime. *See id.* at 949. In *Brooks* we explained that mere possession of a gun may be sufficient to facilitate or potentially facilitate a crime because, even when unused, a firearm may "potentially embolden[]" the defendant or be otherwise integral to the crime's commission. *Id.* (quoting *United States v. Jackson*, 276 F.3d 1231, 1234 (11th Cir. 2001)); *see also id.* at 953 (Grant. J., concurring). Similarly, in *Young*, we applied § 4B1.4(b)(3)(A)—which uses the same "in connection with" language—to a defendant who burglarized a home, and while inside, found and stole a firearm. 115 F.3d at 835. The district court applied the enhancement at sentencing, and, on appeal, we affirmed the court's decision, explaining that the phrase "in connection with" "does not exclude possession of the firearm as the fruit of the crime which the possessor is contemporaneously committing." *Id.* at 837. Though Young had not used the gun, we noted that, "[i]f armed burglars encounter the occupants of a home or law enforcement officials, it makes little difference how the burglars obtained their firearms." *Id.* (quoting *United States v. Guerrero*, 5 F.3d 868, 873 (5th Cir. 1993)). Thus, we affirmed application of the enhancement at least in part because Young's firearm could have been used to execute his burglary or effectuate his escape. After all, "there is a strong presumption that a defendant

aware of the weapon's presence will think of using it if his illegal activities are threatened." *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013). Our question in this case, then, is whether Green's mere possession of the burgled gun had the potential to facilitate or facilitated his burglary.

On first blush, our precedent would seem to support application of § 2K2.1(b)(6)(B) to these facts. Like the defendant in *Young*, Green acquired the gun during the course of a burglary. *See Young*, 115 F.3d at 835. And like defendants in multiple other cases, Green's firearm was theoretically available to facilitate Green's felony and might even have encouraged it. *See United States v. Rhind*, 289 F.3d 690, 694–95 (11th Cir. 2002) (explaining that there was enough evidence to justify an "in connection with" finding where it was reasonable "to conclude that the presence of the firearms protected the counterfeit money from theft during the execution of the felony"); *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (noting, in the context of § 2B5.1(b)(3), that it was proper to apply the enhancement because it was "reasonable to conclude here that [the defendant] possessed the pistol to prevent theft"); *United States v. Smith*, 480 F.3d 1277, 1280 (11th Cir. 2007) (holding that a preponderance of the evidence supported a finding that the defendant possessed ammunition "in connection with" another felony offense where the arresting officer saw the defendant "attempt to reach into an area below his seat, where [the officer] had seen [the defendant] drop a firearm, shortly before [the defendant] began fighting with [the officer]"). But Green contends that his case is distinguishable.

Green argues that his firearm could neither have facilitated nor have had the potential to facilitate the burglary because the burglary was already complete by the time of his arrest. Though Green admits that "'find[ing] and tak[ing]' a firearm 'during the course'" of a burglary may facilitate the burglary (by, for example, helping the defendant thwart capture), he maintains that the opportunity for a defendant's possession of a stolen firearm to facilitate a burglary closes when the burglary is complete. As Green would have it, then, § 2K2.1(b)(6)(B) cannot apply to a defendant arrested long after completing the crime in which he "used or possessed" the relevant firearm.

But Green's distinction appears nowhere in the text of the enhancement. Instead, the text of the enhancement works against him. Recall, the enhancement applies to defendants who "used or possessed" a firearm "in connection with another felony." § 2K2.1(b)(6)(B). Though Green says his possession of the gun at the time of arrest could have had no potential to facilitate the already completed burglary, nothing in the enhancement's text suggests that it applies based upon the manner of the defendant's use or possession of a gun upon arrest. Instead, the enhancement employs the past tense—"used or possessed"—indicating that the enhancement applies when a defendant, at some previous time, possessed or used a gun in connection with another offense. *See* § 2K2.1(b)(6)(B).

In any event, we soundly rejected the impact of an even longer time gap in *Young*. After explaining that the Fifth Circuit's

construction of "in connection with" was persuasive, we noted that the "one distinguishing fact" between the Fifth Circuit's case and Young's was that Young had "obtained the firearm" that was the fruit of his theft "more than a year before he was charged." *Young*, 115 F.3d at 838. However, we ultimately found that distinction unimportant. Provided that the government proved by a preponderance of the evidence that Young had been at the burglary's location on the relevant date, we found no issue applying the enhancement based upon Young's long-completed crime. *Id*. In sum, under both the enhancement's text and our own precedent, § 2K2.1(b)(6)(B) applies where a defendant *at any point* possessed a firearm "in connection with" another felony.

Green can also be fairly read as arguing—albeit in passing— that his firearm could not have had the potential to facilitate a felony because he was unaware of its presence.[1] This is a much stronger argument. We have never applied § 2K2.1(b)(6)(B) in a situation where a defendant was clearly unaware of a firearm's presence. Indeed, awareness is implicit in the concept of facilitation: a firearm is useless to a defendant if the defendant does not know he has it. *Cf. Carillo-Ayala*, 713 F.3d at 92 ("[T]here is a strong presumption that a defendant *aware* of the weapon's presence will

---

[1] Green's failure to develop this argument further or cite cases in support likely means that he abandoned it on appeal. *See Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). However, to the extent it could be considered properly raised, we address it.

think of using it if his illegal activities are threatened." (emphasis added)); *Jackson*, 276 F.3d at 1234–35 ("[P]ossession of a firearm *with intent to use it* to facilitate the commission of a felony offense, or with *intent to use it should it become necessary* to facilitate that crime, is possession 'in connection with' that offense." (emphasis added)); *Matos-Rodriguez*, 188 F.3d at 1309 (noting, in the context of § 2B5.1(b)(3), that it was proper to apply the enhancement because it was "reasonable to conclude here that [the defendant] possessed the pistol *to prevent* theft" (emphasis added)); *Smith*, 508 U.S. at 238 ("The phrase 'in relation to' thus, at a minimum, clarifies that the firearm *must have some purpose or effect with respect to the drug trafficking crime*; its presence or involvement cannot be the result of accident or coincidence." (emphasis added)).

In fact, even cases that do not use language of intent seem to assume that the defendants were aware of a gun's presence. For example, in *Rhind*, we applied § 2K2.1(b)(6)(B) because it was reasonable to conclude that the "presence of the firearms protected . . . counterfeit money from theft during the execution of [a] felony." 289 F.3d at 695. But it is unclear how a firearm can protect anything if the defendant is unaware of its presence. Similarly, in *Smith*, we applied the enhancement only after noting that the arresting officer had seen the defendant "attempt to reach into an area below his seat, where [the officer] had seen [the defendant] drop a firearm, shortly before [the defendant] began fighting with [the officer]." 480 F.3d at 1280. Again, our description of Smith's actions imply that Smith knew of and intended to use the gun below his seat.

However, even if we read Green to raise this argument on appeal, he failed to preserve it below—thus entitling him to only plain error review. *See United States v. Margarita Garcia*, 906 F.3d 1255, 1263 (11th Cir. 2018). And, on plain error review, we cannot say that the district court plainly erred by finding that Green possessed the gun "in connection with" his robbery of the backpack. But even if the district court erred by finding that, regardless of Green's awareness that he possessed a firearm, Green possessed that firearm "in connection with" the burglary—which we do not decide—that error was certainly not plain.

As mentioned previously, the facts of *Young*, in which we affirmed the application of § 2K2.1(b)(6)(B), are strikingly similar to the facts in this case. Without any caselaw explicitly distinguishing the two or discussing the effect of a defendant's awareness, the district court could not have plainly erred by failing to make the distinction itself (especially when the defendant did not so much as nod to the issue during sentencing). *See Lejarde-Rada*, 319 F.3d at 1291 ("It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."). The fact that the district court did not condition its application of § 2K2.1(b)(6)(B) on Green's awareness of the gun's presence was thus not plain error.

The question before us is whether Green's possession of a firearm facilitated or had the potential to facilitate a felony. Our

16                    Opinion of the Court                    22-13097

precedent holds that the presence of a firearm, even when the fruit of a crime, can have the potential to facilitate a crime, and we decline to create any distinction between already completed and ongoing felonies. We thus conclude that the district court did not plainly err by failing to examine *sua sponte* Green's knowledge before finding that Green had used his firearm "in connection with" a burglary.

### B. The *Keene* Statement

We now turn to Green's argument that the district court did not make a *Keene* statement. Under *Keene*, a district court's calculation error is harmless "when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *Goldman*, 953 F.3d at 1221. The district court must have been "aware of the dispute about the guideline application" and had a "chance to determine in the first instance that the sentence [was] proper regardless of any error." *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 2022).

Here, when the district court overruled Green's objection to § 2k2.1(b)(6)(B), it also explained "for appellate review purposes" that:

> in view of the fact of this objection and the Court's ruling on it, the Court would nonetheless impose a reasonable sentence as an alternative that is consistent with the Court's imposition of sentence under the guidelines so that in the event, if for some reason that I have been found to be wrong, you have the benefit

of knowing that and the Circuit has the benefit of knowing that the Court would impose the same sentence post-appeal as a reasonable sentence nonetheless.

The district court calculated that, based on an offense level of 23 and criminal history category of IV, the guideline range was 70 to 87 months. However, after considering the § 3353(a) factors, the district court chose to impose an above-guideline sentence of 100 months.

According to the government, the district court made a *Keene* statement when it asserted that it would issue the same reasonable sentence regardless of whether it properly applied the § 2k2.1(b)(6)(B) enhancement. Green disagrees, arguing that the district court's *Keene* statement was made prematurely, rendering it ineffective. Green asserts that the court could not make a *Keene* statement before it had heard any argument regarding the § 3553(a) factors or had offered Green an opportunity to allocute. We agree.

Making a *Keene* statement before hearing sentencing arguments *or* offering an opportunity for allocution will always be premature for one of two reasons. On the one hand, if the district court does not have a sentence in mind when it makes a purported *Keene* statement, it cannot be certain that its sentence properly accounts for the specific defendant's crime and the § 3553(a) factors, as *Keene* and its progeny require. *See Keene*, 470 F.3d at 1349 (asking whether, assuming there was a guidelines error, "the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable"); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254

(11th Cir. 2015) (explaining that imposing an adequate sentence is a "holistic endeavor that requires the district court to consider a variety" of individualized factors); *see also United States v. Henry*, 1 F.4th 1315, 1327 (11th Cir. 2021) ("The court's statements show that it both considered and understood the effect that accepting § 5G1.3(b)(1)'s advice would have had on [the defendant's] Guidelines sentence . . . because the district court would have imposed the same sentence even under [the defendant's] approach, any error in when or how is considered [the enhancement] was harmless."); *United States v. McLellan*, 958 F.3d 1110, 1116 (11th Cir. 2020) ("At McLellan's sentencing, the district court noted that even if the ACCA were inapplicable, it still would have sentenced McLellan 'to 10 years and 5 years to run consecutive' on his two convictions, because 'the 180 months is sufficient, no more greater than necessary, to fulfill the sentencing factors under [28 U.S.C. §] 3553.'" (alteration in original)).  Here, by announcing that it would impose "the same sentence" not only before it heard the § 3553(a) factors, but before it even announced a sentence, the district court's statement acted more as a nullification of the enhancement than an affirmation of the court's own sentencing decision.  *Keene* does not allow a district court to so insulate its calculations from review.

On the other hand, if the district court did have a sentence in mind, then that sentencing decision improperly preceded the parties' sentencing arguments as well as Green's opportunity for allocution.  We have previously said that "the denial of a defendant's right to allocute [is] prejudicial whenever the possibility of a lower sentence exists," and thus constitutes reversible error.  *United*

*States v. Doyle*, 857 F.3d 1115, 1120 (11th Cir. 2017) (quoting *United States v. Perez*, 661 F.3d 568, 586 (11th Cir. 2011)); *see also United States v. Prouty*, 303 F.3d 1249, 1253 (11th Cir. 2002) (noting that a failure to provide allocution where it might directly affect the defendant's sentence is "manifestly unjust"). What follows is that, in circumstances where a defendant could receive a lower sentence, a district court must allow the defendant a meaningful opportunity to allocute.

True, the district court in this case did later offer Green an opportunity to speak. But if that speech had no potential to affect the judge's decision—that is, if the district court's sentencing decision was truly locked in as required for a *Keene* statement—then Green's right of allocution was essentially null and void. And, in any event, the fact that the district court accepted one of Green's objections after making its *Keene* statement, thereby altering the offense level calculation, highlights the impropriety of the court's having made a sentencing decision before close of the hearing.

The timing of the district court's statement thus rendered it categorically ineffective: it could not have made a *Keene* statement before deciding Green's sentence, as it could not have decided Green's sentence before considering the parties' arguments and offering an opportunity for allocution. Nonetheless, because we find no error in the application of the § 2k2.1(b)(6)(B) enhancement, we need not conduct a harmless error inquiry.

## IV.    CONCLUSION

For the reasons stated, we affirm Green's sentence.

**AFFIRMED.**