**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-10610

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CARLOS ALBERTO MORILLA,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20153-KMM-4

————————————————

Before NEWSOM, LAGOA, and KIDD, Circuit Judges.

LAGOA, Circuit Judge:

Carlos Alberto Morilla pleaded guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and was

sentenced to 57 months' imprisonment.  He now appeals his sentence, raising three issues.  First, Morilla argues that the district court improperly applied a "sophisticated laundering" sentencing enhancement.  Second, Morilla contends that the district court erred in denying a minor-role adjustment.  Lastly, Morilla argues that under the circumstances here, the district court's finding under *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006), cannot shield its Guideline errors from appellate review.

Upon careful review, and with the benefit of oral argument, we conclude that the district court correctly denied Morilla's request for a minor-role adjustment but erred in applying the sophisticated-laundering enhancement.  The district court's purported *Keene* statement—made before hearing arguments from the parties regarding factors under 18 U.S.C. § 3553(a) and before hearing from Morilla himself—does not render that Guidelines error harmless.  We therefore affirm in part, vacate Morilla's sentence, and remand for resentencing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Morilla was charged in a superseding indictment with one count of conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h), and three counts of money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B).  The superseding indictment also charged Morilla's co-conspirators—Jesus Javier Diaz, Yunier Cardenas Calero, and Othoniel Gomez—with conspiracy to engage in money laundering and money laundering.

Morilla agreed to plead guilty to the conspiracy charge in exchange for the dismissal of the three money laundering charges.

Morilla and the government submitted a factual proffer stipulating to the following facts. Morilla and his co-conspirators participated in a money laundering conspiracy that began around March 1, 2022, and ended on May 23, 2023. Morilla and his co-conspirators knew the money being laundered came from the illegal drug trade. Morilla joined the conspiracy on March 14, 2023, when he met with an undercover agent who gave him $200,000 in cash. The next day, Morilla took a six percent laundering fee and wired $188,000 from his personal bank account to the undercover agent's account. On March 24, 2023, the undercover agent gave Morilla $150,000 in cash, and Morilla wired $135,000 back to the undercover agent a few days later. Finally, on April 20, 2023, the undercover agent wired Morilla $200,000 and Morilla wired back $188,000 on April 28, 2023.

The district court accepted Morilla's guilty plea and adjudicated him guilty of conspiracy to engage in money laundering.

The probation officer then prepared a presentence investigation report ("PSI"). The report found Morilla responsible for laundering $550,000 of the total $1,365,000 involved in the conspiracy. The probation officer did not recommend any aggravating or mitigating role for Morilla.

In calculating the applicable guideline range, the PSI recommended a two-level enhancement under the United States Sentenc-

ing Guidelines § 2S1.1(b)(3) "[b]ecause the offense involved sophisticated laundering." After applying the sophisticated-laundering enhancement, the probation officer found that Morilla's total offense level was twenty-five and his criminal history category was one. The probation officer recommended an advisory Guideline range of 57 to 71 months' imprisonment.

Morilla filed an objection to the PSI, arguing that he should receive a two-level downward adjustment under U.S.S.G. § 3B1.2(b) because he was a minor participant in the conspiracy. The probation officer responded that the minor-role adjustment should not apply because Morilla "had a vested interest in the laundering" by accepting a six percent fee and laundered a total of $550,000 over three transactions.

Morilla also objected to the application of the two-level sophisticated-laundering enhancement. Morilla argued that the enhancement should not apply because he did not use "off-shor[e] accounts, fictitious companies, or multi-level [layers] of laundering" and he only "took a single step in moving money for the purpose of laundering." The probation officer responded to the objection by noting that the enhancement should apply because "the conspiracy involved hiding assets, transactions, and the use of covert companies." The government did not file a written response.

At the sentencing hearing, the district court addressed Morilla's two objections to the PSI. With regard to the first objection, Morilla argued that the district court should apply a minor role adjustment because Morilla joined the conspiracy nearly a year after

it began, only participated in the conspiracy for one month, did not recruit anyone, only engaged in three transactions, and took a six percent laundering fee. Morilla asserted that this conduct was less culpable than that of his co-conspirators.

The government disagreed, arguing that each co-conspirator "played somewhat of a comparable role" and that "there wasn't really a leader" of the conspiracy. Although Morilla was the last person to join the conspiracy, he was responsible for laundering $550,000 over a short period of time. Morilla also knew that the money was coming from the illegal drug trade.

As to the second objection, Morilla argued that the district court should not apply a two-level sophisticated-laundering enhancement because he only participated in "one-step laundering" that did not involve any off-shore accounts or shell companies. He was also the owner of the bank account he used for the transactions, so there "wasn't an extra layer of hiding anything." The government agreed that the sophisticated-laundering enhancement should not apply as Morilla's conduct did not amount to sophisticated laundering based on the factors outlined in the Guidelines.

After hearing the parties' arguments, the district court overruled both of Morilla's objections and adopted the probation officer's recommendations "based on the offense conduct" and the evidence that was presented at co-conspirator Gomez's trial. After overruling the objections, the district court stated:

> And, I will also note that in the event that there is any
> appeal on either of those objections, that I would im-
> pose a sentence independent of the guidelines as a
> reasonable sentence under post-[*Booker*[1]] that would
> be equivalent to the sentence that I would impose un-
> der the guideline provision, as well.  Okay. So, you
> have that alternative sentence.

Sentencing Hr'g Tr. at 11:22–12:2, Dkt. No 226.  The district court then calculated a Guidelines range of 57 to 71 months.  After stating that it would have imposed the alternative sentence "independent of the guidelines," the district court asked Morilla if he had any-thing to say, but Morilla deferred to his attorney.

After pronouncing its sentence, the district court turned to consider the 18 U.S.C. § 3553(a) factors.  Morilla asked the district court to consider that: (1) he accepted responsibility early on by pleading guilty; (2) he was a zero-point offender; (3) he had family and community support, which was shown by their presence in the courtroom; and (4) his family would be negatively affected by the lack of his financial support during his incarceration.

The government agreed that a sentence at the low end of the guideline range would be appropriate because of Morilla's lack of criminal history.  But the government reiterated that Morilla's conduct was serious, because it involved multiple transactions, a

---

[1] *United States v. Booker*, 543 U.S. 220 (2005).

significant amount of money, and proceeds he believed were de-
rived from drug-related activity.

The district court concluded that it had "considered the
3553(a) factors" such as Morilla's criminal history, his acceptance
of responsibility, the substantial amount of money involved, the
"sophisticated means" used to conceal the transaction, and the con-
nection of the money laundering conspiracy to the distribution of
narcotics. The district court again announced that Morilla would
serve a sentence of 57 months.[2]

The district court entered a final judgment against Morilla,
and this timely appeal followed.

## II.    STANDARD OF REVIEW

We review de novo the district court's interpretation and
application of the Sentencing Guidelines. *United States v. Dupree*, 57
F.4th 1269, 1272 (11th Cir. 2023) (en banc). We accept a district
court's factual findings unless they are clearly erroneous. *United
States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009). When "a de-
cision either way will not affect the outcome of" a sentencing, it is
unnecessary for us to decide it. *Keene*, 470 F.3d at 1348. Under
*Keene*, "we need not review an issue when (1) the district court
states it would have imposed the same sentence, even absent an

---

[2] If the district court had sustained Morilla's objections to both the sophisti-
cated-laundering enhancement and the denial of the minor-role reduction, the
resulting total offense level would have yielded an advisory Guidelines range
of 37 to 46 months.

alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020).

### III.    ANALYSIS

Morilla raises two issues.  First, he argues that the district court erred in applying the two-level "sophisticated laundering" enhancement.  Second, he contends the district court erred in denying him a minor-role reduction.  Morilla also argues that the district court's alternative-sentence statement under *Keene* does not render any Guidelines error harmless. We address each argument in turn.

### A.  The "Sophisticated-Laundering" Enhancement.

Section 2S1.1(b)(3) provides a two-level increase if a defendant convicted under 18 U.S.C. § 1956 commits an offense that involved "sophisticated laundering."   U.S.S.G. § 2S1.1(b)(3).   The commentary to the Guidelines explains that "sophisticated laundering" refers to "complex or intricate offense conduct pertaining to the execution or concealment" of the laundering offense.  *Id.* § 2S1.1, cmt. n.5(A).  And while the commentary does not make any single feature dispositive, it identifies the kinds of conduct that typically qualify: the use of "fictitious entities" or "shell corporations"; "two or more levels (i.e., layering) of transactions" designed to make criminal proceeds appear legitimate; or "offshore financial accounts." *Id*.  In other words, the enhancement is aimed at laundering conduct that is materially more elaborate, either in how it is carried out (execution) or in how it is masked (concealment), than routine laundering transactions.

Measured against that definition, the sentencing record does not support applying § 2S1.1(b)(3) to Morilla. The parties agree that Morilla's laundering activity consisted of "one layer, which was the one transfer, one transaction from his account into the undercover's account." And during the sentencing hearing, the government acknowledged that the only potential "factor" from the Guidelines commentary that might be implicated in this case was "layering." *Id.* But a single transfer is not "two or more levels" of transactions. *Id.* Nor does the record show that Morilla engaged in the "typical" hallmarks of sophisticated laundering: no offshore accounts, no shell corporations, and no fictitious entities. *Id.*

The district court nevertheless applied the enhancement, not by identifying sophisticated features of Morilla's own laundering conduct, but by adopting a generalized view of "offense conduct" proven at a co-defendant's trial. The district court stated, in substance, that if the offense conduct of the conspiracy as a whole was sophisticated, then "you don't have to differentiate between individual defendants." The district court overruled Morilla's objection "based on the evidence that I heard at trial," and adopted the probation officer's response.

This was error, as the evidence adduced at trial pertained to the actions of co-defendant Gomez, not Morilla. "The rule is that a sentencing judge must make individualized findings." *United States v. Barry*, 163 F.4th 1346, 1350 (11th Cir. 2026). Section 2S1.1(b)(3) does not ask whether *someone* in the conspiracy laundered money in a sophisticated way in the abstract; it asks whether

the offense "involved" sophisticated laundering, as determined through the defendant's relevant conduct under § 1B1.3. The commentary to § 1B1.3 states that "the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity." U.S.S.G. § 1B1.3, cmt. n.3(B).

This Court has held that "to determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003) (quoting *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993)). This is required in cases of criminal conspiracies because "without individualized findings concerning the scope of [the defendant's] involvement with the conspiracy, it cannot be determined that [he] should be liable for some quantity less than all." *Ismond*, 993 F.2d at 1499. As such, in *Hunter*, this Court held that the district court committed reversable error when it failed to make "particularized findings as to the scope of each Appellants' agreement in the larger" criminal scheme. 323 F.3d at 1320.

This is especially true where, as here, a defendant joins a conspiracy that was formed long before his participation. *See id.* ("In the first place, the record reflects that [the defendant] did not join the conspiracy until 2000. He therefore cannot be held accountable for conduct that occurred prior to his entry into the joint criminal undertaking."); *see also* U.S.S.G. § 1B1.3, cmt. n.3(B) ("A defendant's

relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct[.]"). Morilla joined the conspiracy in March 2023, a year after his co-defendants formed it.

Even if the district court had made individualized findings as to Morilla, nothing in the record identifies (1) what specific sophisticated-laundering conduct the district court believed existed, (2) whether that conduct occurred during Morilla's limited period of participation, or (3) whether Morilla agreed to jointly undertake the conduct that allegedly made the laundering "complex or intricate" within the meaning of § 2S1.1's commentary. U.S.S.G. § 2S1.1, cmt. n.5(A). Indeed, the parties agreed that the government's own articulation of the only potentially applicable hallmark, layering, does not match a record of one-step transfers using accounts Morilla owned.

Because the district court imposed the sophisticated-laundering enhancement based on a generalized assessment of the conspiracy rather than based on individualized findings concerning the scope of Morilla's involvement with the conspiracy, its Guidelines calculation was erroneous. We turn next to the district court's ruling on Morilla's request for a minor-role reduction.

## B. The Minor-Role Reduction.

Morilla next argues that the district court erred in denying him a minor-role reduction under U.S.S.G. § 3B1.2. That provision authorizes a two-level decrease for a defendant who was a "[m]inor [p]articipant" in the criminal activity, meaning one "less culpable

than most other participants," though not minimal.  U.S.S.G. § 3B1.2, cmt. n.5.  The determination must be based on the "totality of the circumstances" and is "heavily dependent upon the facts of the particular case."  *Id.* cmt. n.3(C).

The commentary to the Guidelines identifies a non-exhaustive set of factors that courts must consider, to the extent applicable: (i) the defendant's understanding of "the scope and structure of the criminal activity"; (ii) the degree to which he "participated in planning or organizing it"; (iii) whether he "exercised decision-making authority"; (iv) "the nature and extent of [his] participation," including his responsibility and discretion; and (v) the degree to which he "stood to benefit."  *Id.* cmt. n.3(C)(i)–(v).  Although no single factor is dispositive, a sentencing court "must consider all of these factors to the extent applicable, and it commits 'legal error in making a minor role decision based solely on one factor.'"  *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019) (quoting *United States v. Presendieu*, 880 F.3d 1228, 1249 (11th Cir. 2018)).

To guide a court in this fact-intensive inquiry, we have explained that two principles should govern.  First, "the district court must measure the defendant's role against [his] relevant conduct, that is, the conduct for which [he] has been held accountable under U.S.S.G. § 1B1.3."  *United States v. Rodriguez De Varon*, 175 F.3d 930, 934 (11th Cir. 1999).  Second, "where the record evidence is sufficient, the district court may also measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant."  *Id.* (citing U.S.S.G. § 3B1.2, cmt. n.3).

Because *De Varon*'s framework turns on "relevant conduct," the sentencing court must first determine the scope of the criminal activity the defendant agreed to jointly undertake. *See* U.S.S.G. § 1B1.3(a)(1)(B). A defendant's accountability "for the acts of others is limited by the scope" of that agreement, and the court must identify that scope before attributing additional conduct. *Id.* § 1B1.3, cmt. n.3(B). Moreover, relevant conduct "does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." *Id.*

Here, the record supports the district court's denial of a minor-role reduction. The stipulated facts establish that Morilla laundered approximately $550,000 in drug proceeds over the course of roughly one month through three separate wire transfers to an undercover agent. Morilla knew the funds were proceeds of illegal drug trafficking and he received a six-percent fee for each transaction, earning approximately $39,000. Although Morilla's participation in the conspiracy was relatively brief, the record reflects that he personally laundered nearly half of the total funds involved in the scheme. On this record, the district court could reasonably conclude that Morilla was not "substantially less culpable than the average participant" in the conduct for which he was held accountable. *De Varon*, 175 F.3d at 943.

Morilla argues that the district court failed to make specific findings regarding the scope of his criminal activity. But as we explained in *De Varon*, "[i]n making the ultimate determination of the

defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings. . . . So long as the district court's decision is supported by the record . . . ,a simple statement of the district court's conclusion is sufficient." *Id.* at 939.

Because the record supports the district court's conclusion that Morilla was not entitled to a minor-role adjustment, we conclude that the district court did not clearly err in denying the reduction and we affirm as to this issue. We now turn to the *Keene* issue.

### C. The District Court's *Keene* Statement is Ineffective.

Because the district court committed a Guidelines error in applying the sophisticated-laundering enhancement, we must decide whether that error was harmless under the alternative-sentence doctrine of *United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006).[3] We conclude that it was not because the district court's purported *Keene* statement was made at a procedurally premature point in the sentencing sequence and therefore cannot insulate the sentence from appellate review.

Under *Keene*, an error in calculating the advisory range may be deemed harmless only when two requirements are satisfied: "(1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, 953 F.3d 1213, 1221

---

[3] As the government conceded during oral argument before this Court, if the district court's *Keene* finding is invalid, then an erroneous application of the sophisticated-laundering enhancement is not harmless.

(11th Cir. 2020). *Keene* described this as "an assumed error harmlessness inquiry," where we assume the Guidelines issue should have been resolved in the defendant's favor and then ask whether "the final sentence resulting from consideration of the § 3553(a) factors would still be reasonable." 470 F.3d at 1349.

In *Keene*, we explained that we could avoid "pointless reversals and unnecessary do-overs of sentence proceedings" if the district court faced with disputed Guidelines issues stated that a "decision of those issues does not matter to the sentence imposed after the § 3553(a) factors are considered." *Id.* (quoting *United States v. Williams*, 431 F.3d 767, 773 (11th Cir. 2005) (Carnes, J., concurring)). In such a case, the Guidelines error in the imposed sentence would be harmless because it did not affect the outcome. *Id.* So "when a district court states that the sentence it has imposed would not have changed even with a different guideline calculation," "we assume there was an error, reduce the guideline range according to the way the defendant argued, and analyze whether the sentence would be substantively reasonable under that guideline range." *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 20122) (citing *Keene*, 470 F.3d at 1349–50).

The question here, however, is not *whether* the district court made a *Keene* statement (it did), but whether the *Keene* statement made by the district court renders the error harmless. The answer to that question turns on *when* the district court made the *Keene* statement.

Although *Keene* did not expressly address when an alternative-sentence statement must be made, its reasoning makes clear that it should occur after both sides are heard and all relevant factors are considered. In *Keene*, the Guidelines error was harmless because it had no effect on "the sentence imposed *after* the § 3553(a) factors [were] considered." 470 F.3d at 1349 (emphasis added). The focus was on the sentence ultimately imposed following the court's full § 3553(a) analysis, not on a preliminary declaration made at the Guidelines stage.

That framework makes the timing of an alternative-sentence statement consequential. Federal sentencing is not complete when the court announces its Guidelines rulings. The district court must still hear the parties' arguments on the § 3553(a) factors and provide the defendant with an opportunity to allocute, procedural safeguards that help ensure an individualized, legitimate sentencing decision. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015); *United States v. Prouty*, 303 F.3d 1249, 1253 (11th Cir. 2002). Consistent with that structure, we have observed that "the better practice" is for the district court to make clear, "at the time of pronouncing the sentence," that it would impose the same sentence regardless of the Guidelines range. *United States v. Delgado*, 981 F.3d 889, 900 n.8 (11th Cir. 2020).

The record here reflects the opposite sequence. After overruling Morilla's two Guidelines objections, the district court immediately announced—before any § 3553(a) argument and before allocution—that "I would impose a sentence independent of the

guidelines as a reasonable sentence under post-[*Booker*]," equivalent to the sentence it would impose under the Guidelines. Sentencing Hr'g Tr. at 11:22–12:2, Dkt. No 226. Only after that declaration did the district court ask Morilla whether he wished to speak and then hear counsel's § 3553(a) presentation.

The district court's sequencing turns *Keene*'s harmlessness inquiry on its head. *Keene*'s assumed error harmlessness inquiry turns on whether the court can say, with confidence, that it would impose the same sentence after meaningful consideration of the § 3553(a) factors. *See Keene*, 470 F.3d at 1349–50. A statement made before the court hears the parties' § 3553(a) arguments, and before the defendant has had the opportunity to allocute, cannot do that work, because it precedes the very adversarial presentation and allocution that federal sentencing procedure makes consequential. *See Prouty*, 303 F.3d at 1253. Put differently, a pre-argument *Keene* statement either (1) reflects that the sentencing decision was effectively fixed before the required § 3553(a) presentation and the defendant's allocution, or (2) reflects that the court had not yet completed the holistic § 3553(a) analysis that *Keene* presupposes. Either way, such a statement does not reliably demonstrate what *Keene* requires, namely, that the same sentence would be imposed after meaningful consideration of the § 3553(a) factors.

Morilla's later opportunity to speak does not cure the problem. Morilla declined allocution only after the court had already announced that, if its Guidelines rulings were reversed, it would impose the same sentence anyway. But allocution is not a hollow

ritual; it is a procedural safeguard designed to matter to the sentencing outcome. *Id.* When the district court has already declared, before allocution, that the outcome will be the same regardless, the record no longer permits confidence that the defendant's opportunity to be heard had any realistic potential to affect the sentence.

The government's suggestion that any defect is harmless because defense counsel's § 3553(a) arguments largely tracked information already contained in the PSI fares no better. The point of *Keene* is not whether the judge had access to information in writing; it is whether the district court can confidently say the same sentence would be imposed after the adversarial § 3553(a) presentation and the defendant's allocution—procedural steps that are designed to shape the court's individualized judgment. To accept the government's position would invert the sentencing sequence *Keene* presupposes and treat the § 3553(a) hearing as a formality rather than a required, consequential step.

When there is a Guidelines error and the district court issues a *Keene* statement before hearing the parties' arguments, applying the § 3553(a) factors, and allowing the defendant to allocute, we cannot say that the error was harmless. A premature Keene statement renders those procedural safeguards meaningless.[4] We thus

---

[4] Because we find that the district court committed a procedural error in calculating the Guidelines range and the government has failed to prove that such an error was harmless, we need not engage with the second step in *Keene* to determine whether the sentence was substantively reasonable. *See Goldman*, 953 F.3d at 1221.

conclude that because the district court's purported *Keene* statement was made at a procedurally premature point in the sentencing sequence, the *Keene* statement cannot insulate the sentence from appellate review.

## IV.    CONCLUSION

For the reasons stated, we affirm the district court's denial of Morilla's request for a minor-role adjustment, but we vacate the district court's sophisticated-laundering sentencing enhancement. We thus affirm in part and vacate Morilla's sentence. We remand to the district court for resentencing consistent with this Opinion.

**AFFIRMED IN PART, VACATED AND REMANDED.**